PLINY CADWELL & another *vs.* EZEKIEL BLAKE & another.

Where a written contract requires certain acts to be done by one party, which must, in the order of events, necessarily be done before the other party can fulfil his part of the contract, the doing of such acts is a condition precedent to maintaining an action for nonperformance by the other party, although there is a stipulation for liquidated damages for not doing them, and there is a time fixed for payment, sufficiently distant to allow the work to be done in the mean time.

By an agreement in writing, "A sells to B all the right, title and interest which A has in the machin;ry and fixtures now at his paper mill;" and "agrees that B shall have the right which A has to manufacture white paper, made from straw and other materials.

which right has been assigned to A by C, and as described in the application of A for letters patent of the United States; and also agrees to instruct B fully in the art and mystery of preparing the straw and other materials, and manufacturing the same into paper, and to communicate to B from time to time all the improvements which A shall make in said art, and give B the benefit thereof, which instructions B is to keep secret, so far as secrecy can be preserved consistently with his business;" and "B is to pay for said machinery and fixtures four thousand dollars, in four equal annual payments, in paper manufactured according to the process above mentioned, at the market price;" and "to take possession of said machinery and fixtures," within six months from the date of the agreement, and to "pay to A, for the right to manufacture said paper," a certain share of the profits, if they exceed a certain amount, but not otherwise; and it is finally stipulated that "if A shall, upon request, refuse to teach B the art of making said paper, he shall forfeit, as liquidated damages, distinct from all the other liabilities under this contract, the sum of four thousand dollars." *Held*, that A could not maintain an action for any part of the price of the machinery and fixtures, without instructing B in the art and mystery of preparing the materials, and also securing to B the right to manufacture paper by said process.

ACTION OF CONTRACT, commenced on the 5th of April 1854 by the assignees in insolvency of David Ames and John Ames, upon an agreement in writing made by the latter with the defendants on the 26th of January 1853.

The following are the material parts of that agreement: " The said D. & J. Ames hereby sell to the said Blake & Valentine all the right, title and interest which the said D. & J. Ames have in the machinery and fixtures now at their paper mill at Chicopee Falls. They also agree that said Blake & Valentine shall have the right which said D. & J. Ames have to manufacture white paper, made from straw and other materials; which right has been assigned to said D. & J. Ames by Jean Theodore Coupier and Marie Amadee Charles Millier, and as described in the application of said D. & J. Ames for letters patent of the United States. They also agree to instruct the said Blake & Valentine fully in the art and mystery of preparing the straw and other materials, and manufacturing the same into paper, and to communicate to them from time to time all the improvements which they, the said D. & J. Ames, shall make in said art, and give them the benefit thereof; which instructions the said Blake & Valentine are to keep secret, so far as secrecy can be preserved consistently with their business.

" The said Blake & Valentine are to pay for said machinery and fixtures four thousand dollars, in four equal annual pay-

ments, with annual interest from date. Payment is to be made in paper, manufactured according to the process above mentioned, at the market price of such paper at the time when each payment shall become due, the paper to be delivered at the Western Railroad freight depot in Springfield. They also agree to take possession of said machinery and fixtures by the fourth of July next, and proceed as soon as may be with the manufacture ; and to pay to said D. & J. Ames, for the right to manufacture said white paper," a certain share of the profits, if the profits exceed two cents a pound ; otherwise, nothing.

" If any dispute or disagreement shall arise between the parties in regard to the estimate of the profits, it shall be referred to three disinterested men, one to be chosen by each party, and the third by the two referees, and the award shall be binding on the parties."

" If the said D. & J. Ames shall, upon request, refuse to teach the said Blake & Valentine the art of making said paper as above mentioned, they shall forfeit, as liquidated damages, distinct from all the other liabilities under this contract, the sum of four thousand dollars."

The declaration set forth the agreement, and averred that David Ames and John Ames delivered said machinery and fixtures to the defendants according to the terms thereof, and the defendants accepted and received the same ; that the defendants owed the plaintiffs therefor the sum of one thousand dollars with interest, and also the interest due on four thousand dollars, as therein stipulated ; and that the plaintiffs had been ready to receive the paper therein specified, yet the defendants had not delivered the same, but had refused so to do.

Answer, 1st. That the defendants entered into said agreement, upon the consideration and for the purpose of securing the right to manufacture white paper from straw by the process therein named, and of obtaining the necessary instructions in said art and mystery ; that D. & J. Ames and the plaintiffs had failed to fulfil their contract in this behalf, and had neglected and refused to secure to the defendants the right to manufacture according to said process, and to instruct them in the art and mystery thereof

although repeatedly requested by the defendants so to do, and had prevented the defendants from using said process. 2d. That there had been a failure of consideration for the contract on their part; that said machinery and fixtures were of no value to them, without said instructions and said right to manufacture; and they had offered to return them. 3d. That D. & J. Ames were not the proprietors of said right to manufacture, and had not at the time, nor obtained since, any effectual assignment thereof, or any right to contract with the defendants therefor; or else had failed to avail themselves of such assignment, and had abandoned, lost, and suffered themselves to be deprived of the right to use said process, and of the patent issued therefor; whereby their agreement to give the defendants such right had been defeated, and the defendants prevented from using said process and from manufacturing said paper. 4th. That the defendants by such failure to secure to them said right and to give them such instructions, had been prevented from fulfilling the agreement on their part. 5th. That D. & J. Ames were requested to teach the defendants the art and mystery of making said paper according to said process, but neglected and refused so to do, and thereby incurred a forfeiture under said agreement of the sum of four thousand dollars as liquidated damages; which the defendants claimed the right to apply to offset and cancel all claims of the plaintiffs under the agreement.

At the trial in this court, the defendants admitted the execution of the agreement, and the delivery to them of possession of the paper mill, machinery and fixtures about the 1st of March 1853. The plaintiffs then rested their case.

The defendants contended that the plaintiffs were not entitled to recover, without proving " 1st. That D. & J. Ames had such an assignment of the right as their contract states; 2d. That they had availed themselves of it, and made it effectual to secure to themselves the patent, or at least a right to manufacture under it for themselves and the defendants; 3d. That they had conveyed or secured to the defendants the right to use the process; 4th. That they had instructed the defendants in the art of making said paper "

The plaintiffs denied that it was necessary for them to offer any further evidence, or that any of the matters alleged in the answer constituted a good defence to the action.

*Bigelow*, J. ruled that the plaintiffs had made out a *prima facie* case, and would be entitled to a verdict, unless the defendants went forward and offered evidence of the matters set out in their answers; and reported the case for the determination of the full court, upon these two questions: 1st. The correctness of his ruling as to the sufficiency of the case as presented by the plaintiffs; 2d. The sufficiency of the grounds of defence set forth in the answer; a new trial to be had if, upon either of these points, the opinion of the court should be in favor of the defendants.

The arguments and decision upon this report were had at the last September term.

*W. G. Bates & J. Wells*, for the defendants.

*F. Chamberlin*, for the plaintiffs, cited *Boone* v. *Eyre*, 2 H. Bl. 273 *note*; *Stavers* v. *Curling*, 3 Bing. N. C. 355; *Campbell* v. *Jones*, 6 T. R. 572; *Lloyd* v. *Jewell*, 1 Greenl. 356; *Knapp* v *Lee*, 3 Pick. 452; Platt on Cov. 90, 106; *Knight* v. *New England Worsted Co.* 2 Cush. 271; *Townsend* v. *Wells*, 3 Day, 327; *Couch* v. *Ingersoll*, 2 Pick. 300; *Pordage* v. *Cole*, 1 Saund. 320, *& note* 4; *Franklin* v. *Miller*, 4 Ad. & El. 599.

SHAW, C. J. No question arises in the present case as to the pleading; the declaration is perhaps sufficient, under the new practice act, to enable the plaintiffs to recover, inasmuch as it does briefly aver the performance on the part of D. & J. Ames, and the plaintiffs, their assignees in insolvency, of all things on their part, by the terms of the contract, to be performed. But it is a question of proof; did the plaintiffs offer sufficient proof of performance on their part, to enable them to recover? This again depends on the construction of the contract, and whether, according to its true interpretation, the stipulation for the payment of $4,000 and interest, in paper to be manufactured by the process contemplated by the contract, was independent, and to be performed absolutely by such payment; or was it dependent and conditional, and to be performed only on condition that

certain other things should be first performed on the part of the said D. & J. Ames ?

The contract consists of several articles on both sides, is expressed in terms somewhat brief, and it is not easy to gather from it the full and clear intent of the parties. The great purpose of the contract seems to have been for D. & J. Ames to transfer to the defendants a right, a useful and beneficial right, to manufacture and sell white paper in so cheap a manner and in such quantities as to yield a profit, which right D. & J. Ames had acquired so far as it could be acquired by assignment before patent, and of which they were expecting to become the patentees by a patent to be regularly issued by the competent authority of the United States. The particular right is no otherwise specifically described and identified than as a right which had been assigned to them by Coupier & Millier, and as described in the application of D. & J. Ames for letters patent. It manifestly looked to the expectation that D. & J. Ames were to be the patentees, because they were the assignees and had applied for a patent, and because they stipulated to extend to the defendants all the benefit of the improvements which they should make.

In construing a mutual agreement, in which there are several stipulations on both sides, the question, whether one is absolute and independent, or conditional and made to depend on something first to be done on the other side, does not depend on any particular form of words, or upon any collocation of the different stipulations; but the whole instrument is to be taken together, and a careful consideration had of the various things to be done, to decide correctly the order in which they are to be done.

It is contended that, as the machinery and fixtures were to become the property of the defendants at once, at a fixed price of $4,000, payable at a certain time, they were to pay for them at all events, whether the manufacture of paper by the new process should go on or not. There would be more force in this argument if it appeared that the fixtures and machinery thus sold were adapted to the general purposes of paper-making, and

had a market value, independently of the new process, and especially if the time for making the payment had been fixed at a time before the acts to be done on the other side.

But in this case, for aught that appears, the machinery and fixtures would be of little value except for manufacturing by the new process. And possibly the defendants may have stipu· lated to pay a sum greater than their value for these articles, in consideration of the advantages expected from the whole contract.

The stipulation, that the price of the machinery and fixtures should be paid at a fixed time, affords no criterion for determining that the stipulation is independent; because there was ample time, before the first payment, for D. & J. Ames to transfer the machinery, afford all the necessary instruction, execute and deliver a license conveying to the purchasers a right to manufacture, and do all other acts relied on as conditions precedent.

But the strong ground on which the court are of opinion that these acts of D. & J. Ames were conditions precedent is, that these payments were to be made by a delivery of paper, to be manufactured by this new process from straw and other materials, at the then market value. This process is recognized and represented in the contract itself as an art and mystery, to be kept secret as far as practicable, not yet patented, and of which, therefore, there was no specification in the patent office, from which the process could be learned. The machinery sold may have been that of the inventors, adapted to the making of paper by this process.

It seems to us that these two stipulations—to deliver the machinery, and to give the instruction—stand upon the same footing, because both were necessary to the making of paper by this process. The stipulation to instruct in the art and mystery was absolute and affirmative, like that to deliver the machinery, not dependent on request. There was a distinct stipulation, that if they should refuse to instruct, on request, they should be liable to liquidated damages; but it has a distinct object, and does not supersede the other.

Without instruction in this art and mystery, the defendants might not know the method of preparing the straw and using the machinery; without these, this kind of paper could not be made, it could have no market price, the defendants could not make it, and of course could not deliver it.

When, in the order of events, the act to be done by the one party must necessarily be done before the other can be done, it is necessarily a condition precedent, although there be a stipulation for liquidated damages for the breach on each side, and although there be a fixed future time for payment, sufficiently distant to have the work done in the mean time. Suppose B agrees to build, at his own shop, a carriage for A, of A's materials; A stipulates seasonably to furnish materials, and to pay B in four months; and each, upon failure, stipulates to pay a sum as liquidated damages. The furnishing or tendering the materials by A is a condition precedent. Without it, B cannot perform. He must build it of A's materials. Even building it of his own would not be a performance. B has his shop, his tools and his workmen all ready, but A does not furnish the materials. If B sues A, averring readiness to perform, he may recover. But if A sues B for not building the carriage, it would be a good answer that A himself had not furnished the materials; because, whatever else the contract may contain, this is in its nature a condition precedent.

The court are therefore of opinion that the plaintiffs, as a part of their own case, should not only have averred, but should have offered proof at the trial, that D. & J. Ames gave full and ample and reasonable instruction to the defendants, or—which is of the same legal effect, in matters of contract for doing specific acts — that they tendered and offered such instruction, in regard to the preparation of the material and the use of the machinery, to enable them to make the paper in the manner and of 'the material proposed, which the defendants declined receiving.

The court are also inclined to the opinion that the legal effect of the stipulation of D. & J. Ames with the defendants was, that they should have a full right to manufacture paper, by the

process therein indicated, whatever the nature of the right then was or might become by the obtaining of a patent, which it appears by the contract they expected to obtain, or in failure of such patent, such right as they should hold from the assignment to them by Coupier & Millier. They were embarking in a new and expensive enterprise; and should another person obtain a patent, which might happen, they might be placed in a situation in which they could not carry on the manufacture without infringing the right of another. If the patent was obtained by D. & J. Ames, it seems to us that they should have tendered to the defendants an assignment of the patent, or at least a right under it; or that, if the application was still pending, or had been denied, and there was no patent, that fact should have been averred. But we have not placed our decision ordering a new trial mainly on that ground; but throw out the suggestion, for the consideration of parties, should a new trial be had.

But there is another ground upon which the court are of opinion that a new trial ought to be had. Perhaps both points reserved in the report depend substantially upon the same question of construction of this contract, namely, whether any of the stipulations of D. & J. Ames constituted conditions precedent; because, if they did, and so far as they did, and the defendants have averred the performance of them, they would, if proved by the defendants, as they offered to do, be a good defence. Upon looking at the answer, we think that, even if the plaintiffs had made out a *prima facie* case, several of the facts stated in the answer would have been competent for the defendants to prove; and, if proved, would have been available in defence, either by way of bar, or in reduction of damages.

*New trial ordered.*

The plaintiffs then amended their declaration by inserting an averment " that the said D. & J. Ames instructed the defendants in the art and mystery of preparing the straw and other materials, and manufacturing the same into paper, and offered them further instructions if they should need it, and full examination of the premises of the said D. & J. Ames, and permission to

take dimensions, and to be shown the use and application of whatever they might desire to inquire about, and to give them all needful information which they should require."

The defendants demurred to the declaration, for that it did not state a legal cause of action, substantially in accordance with the rules contained in the *St.* of 1852, *c.* 312; " because it docs not allege that the plaintiffs, or said D. & J. Ames, had secured to the defendants the right to manufacture paper by the process named in said contract, nor that the defendants have the right to manufacture according to the terms of the contract."

*Bates & Wells,* for the defendants.

*R. A. Chapman & Chamberlin,* for the plaintiffs.

SHAW, C. J.   The court are of opinion that this demurrer is well taken and must be sustained.   It is true there is no warranty, in terms, of a right to manufacture paper by the process referred to ; but we think such a warranty and condition results from the provisions of the contract, the whole of which must be taken together.   D. & J. Ames agree that the defendants shall have the right to manufacture white paper from straw and other materials, which right has been assigned to D. & J. Ames by Coupier & Millier.   It is not merely hypothetical, such right as they have, if they have any ; but an express stipulation that they shall have the right, and an affirmative averment of the fact, that it has been assigned to them, so that they have the power to assure it, with an intimation that the assignment is of such a character as to induce them to apply for a patent, which, if granted, would secure to them an exclusive right.   If they had such an assignment, whether they obtained a patent or not, it would prevent any other person from obtaining a patent so as to exclude them from the right.   Such a stipulation, accompanied with such an express undertaking that they held such an assignment, amounted to a stipulation that no other person should have such right as to exclude them therefrom, and that, either by a grant of the patent right from D. & J. Ames if they obtained one, or by common right if none should be obtained, the defendants should have the right to manufacture by this new and peculiar process.   When we consider that the whole objec-

of the contract was to enable the defendants to manufacture by this process; that the consideration of the undertakings of the defendants, was their right and power so to manufacture paper; that the debt was to be paid in paper thus to be manufactured; that without such right the machinery and fixtures might be of little value to them, and the teaching of an art they could not practice, without infringing the rights of others, wholly useless, the conclusion seems inevitable, that the enjoyment of a right to use this art and process, patented or unpatented, was re· garded by the parties as a condition, without a performance of which, on the part of D. & J. Ames, or those who claim under them, the defendants are not bound to make the stipulated pay- ments.                                    *Demurrer sustained*